IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00025-STV

DANIEL B. OLGUIN,

    Plaintiff,

v.

ADAMS COUNTY, a political subdivision of the State of Colorado,
JAMES GRAHAM, individually, and in his official capacity,
JAI ROGERS, individually, and in his official capacity,
BONNIE HERNANDEZ, individually,

    Defendants.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Adams County Defendants' Partial Motion to Dismiss (the "Motion").[1]  [#15]   The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##26, 29, 30]   The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Motion is **GRANTED**.

---

[1] The Adams County Defendants include Adams County, Detective Jai Rogers, and Officer James Graham.  [#15]

**I.    BACKGROUND**[2]

During January 2019, Plaintiff was in a romantic relationship with Defendant Bonnie Hernandez.  [#1, ¶ 10]  Ms. Hernandez has a history of mental illness and panic attacks, which periodically induce fainting.  [*Id.* at ¶ 13]  On the morning of January 5, 2019, Ms. Hernandez went to the Adams County Sheriff's Office and reported false accusations against Plaintiff.  [*Id.* at ¶ 20]  Ms. Hernandez reported that Plaintiff had surveilled her via electronic technology and that he controlled her movement, communications, and spending.  [*Id.* at ¶ 22]  She also reported that Plaintiff's house bore evidence of a homicide.  [*Id.*]  In reality, Ms. Hernandez was upset that Plaintiff had deferred their engagement to be married, pending her agreement to seek therapy for her mental illness.  [*Id.* at ¶ 21]

Unaware that Ms. Hernandez had been at the Adams County Sheriff's Office making false accusations against him, Plaintiff became concerned when Ms. Hernandez failed to appear for their January 5th breakfast date and failed to respond to Plaintiff's phone calls and text messages.  [*Id.* at ¶¶ 12, 14-15]  Concerned for her safety, Plaintiff went to Ms. Hernandez's home and attempted to locate her.  [*Id.* at ¶¶ 15-16]  When Ms. Hernandez would not answer the door, Plaintiff entered her house through the dog door.  [*Id.* at ¶ 17]  After confirming that Ms. Hernandez was not at her home, Plaintiff called 9-1-1 to report Ms. Hernandez missing.  [*Id.* at ¶ 18]

In response to Plaintiff's call, the Adams County Sheriff's Office sent an officer to Ms. Hernandez's residence and arrested Plaintiff.  [*Id.* at ¶ 19]  The warrantless arrest

---

[2] The facts are drawn from the allegations in Plaintiff's Complaint [#1], which must be taken as true when considering a motion to dismiss.  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

was made pursuant to an affidavit authored by Defendant Adams County Sheriff's Detective Jai Rogers and premised upon Ms. Hernandez's accusations. [*Id.* at ¶ 23] While Plaintiff was in custody, the Adams County Sheriff's Office asked Plaintiff for consent to search his home. [*Id.* at ¶ 24] Plaintiff refused. [*Id.*] Ms. Hernandez, however, signed a consent form purporting to grant the Adams County Sheriff's Office authority to search Plaintiff's home. [*Id.* at ¶ 25]

The next day, Ms. Hernandez called the Adams County Sheriff's Office to report evidence of unlawful activity in Plaintiff's home, including evidence of violence and surreptitious surveillance. [*Id.* at ¶ 26] Defendant Adams County Sheriff's Officer James Graham asked Ms. Hernandez to accompany him to Plaintiff's house to search for evidence. [*Id.* at ¶ 27] Ms. Hernandez agreed, and Officer Graham and Ms. Hernandez entered Plaintiff's house without a warrant and against Plaintiff's express refusal of consent. [*Id.* at ¶ 28] While in Plaintiff's house, Officer Graham seized a gold chain and flash drive belonging to Plaintiff. [*Id.* at ¶ 29]

Based upon Ms. Hernandez's accusations and the Adams County Sheriff's Office's investigation, the Adams County District Attorney filed criminal charges against Plaintiff for burglary, stalking, and trespass. [*Id.* at ¶ 30] At an April 1, 2019 preliminary hearing in that case, Detective Rogers acknowledged that he was the lead detective investigating the criminal accusations made by Ms. Hernandez against Plaintiff. [*Id.* at ¶ 31] As the lead detective, Detective Rogers exercised supervisory authority over Officer Graham. [*Id.* at ¶ 32] During the preliminary hearing, Detective Rogers further acknowledged: (1) a state court had denied Detective Rogers' request for a warrant to search Plaintiff's home; (2) as of January 5, 2019, the Adams County Sheriff's Office

knew Ms. Hernandez did not reside at Plaintiff's home; and (3) the Adams County Sheriff's Office and Officer Graham did not have any authority to search Plaintiff's home on January 6, 2019.  [*Id.* at ¶¶ 33-35]  Despite Detective Rogers' admission that Officer Graham did not have any authority to search Plaintiff's home, Detective Rogers did not discipline Officer Graham for conducting the search.  [*Id.* at ¶ 36]  Ultimately, the Adams County District Attorney dismissed the burglary and stalking charges, and the trespass charges were transferred to Jefferson County, Colorado, where they remain pending.  [*Id.* at ¶ 39]

Plaintiff filed the instant lawsuit on January 5, 2021.  [#1] The Complaint brings four claims for relief:  (1) a claim pursuant to 42 U.S.C. § 1983 alleging that Defendants Adams County, Detective Rogers, and Officer Graham violated Plaintiff's Fourth Amendment rights by conducting an unlawful search and seizure, (2) a Colorado civil theft claim against Defendant Hernandez, (3) a Colorado conversion claim against Defendant Hernandez, and (4) a Colorado defamation claim against Defendant Hernandez.  [*See generally id.*]  On September 30, 2021, Plaintiff moved to dismiss his claims against Defendant Hernandez [#25], and this Court subsequently granted that motion [#31].  Thus, the only remaining claim is the Section 1983 claim against Defendants Adams County, Detective Rogers, and Officer Graham.

Through the Motion, the Adams County Defendants seek to dismiss the Section 1983 claim against: (1) Adams County, (2) Detective Rogers and Officer Graham in their official capacities, and (3) Detective Rogers in his individual capacity.[3]  [#15]

---

[3] The Motion does not seek to dismiss the claim against Officer Graham in his individual capacity.  [#15 at 2]

Plaintiff has responded to the Motion [#22] and the Adams County Defendants have replied [#28].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief

under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III. ANALYSIS

Plaintiff seeks relief under 42 U.S.C. § 1983, alleging unlawful search and seizure in violation of his Fourth Amendment rights. [#1] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting under color of state law." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (quoting 42 U.S.C. § 1983).

The Adams County Defendants have moved to dismiss Plaintiff's Section 1983 claim as asserted against Detective Rogers in his individual capacity. [#15 at 7] They also have moved to dismiss Plaintiff's Section 1983 claim as asserted against Adams County and as asserted against Detective Rogers and Officer Graham in their official capacities. [*Id.* at 4-7] The Court addresses each argument below.

#### A. Plaintiff's Claim Against Detective Rogers In His Individual Capacity

The Adams County Defendants argue that Plaintiff has failed to plausibly plead Detective Rogers' personal participation in the alleged unconstitutional search. [#15 at 7] The Tenth Circuit has made clear that "[p]ersonal participation is an essential allegation in a [Section 1983] claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Thus, to succeed on a Section 1983 claim against an individual defendant, the plaintiff must allege the "defendant's direct personal responsibility for the claimed

6

deprivation of a constitutional right." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

The mere fact that a defendant is a supervisor is insufficient to establish the personal participation necessary for a Section 1983 claim. *Dodds v. Richardson*, 614 F.3d 1185, 1194-99 (10th Cir. 2010). Rather, to assert a supervisory liability claim, the plaintiff must allege "an affirmative link between the constitutional deprivation and the supervisor's personal participation, exercise of control, or his failure to supervise." *Bertolo v. Benezee*, 601 F. App'x 636, 639 (10th Cir. 2015) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)). Thus, "[a] plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

Here, the Complaint fails to plausibly allege either Detective Rogers' personal participation in the alleged constitutional violation or the affirmative link needed to establish supervisory liability. Detective Rogers is not alleged to have participated in the search. [*See* #1 at ¶¶ 42-40] And the Complaint does not allege that Detective Rogers was even aware of Officer Graham's intent to search Plaintiff's home, let alone that Detective Rogers authorized or approved the search.[4] Nor does the Complaint

---

[4] In his response, Plaintiff argues, in part, that Detective Rogers had direct involvement in the search because he "authored the affidavit supporting Plaintiff's warrantless arrest on January 5, 2019." [#22 at 7] But Plaintiff's claim against Detective Rogers is regarding the search of his home—not his arrest—and the facts regarding the arrest

allege that Detective Rogers had a policy of encouraging officers to skirt the Fourth Amendment's warrant requirement. Thus, because the Complaint fails to plausibly allege personal participation or the affirmative link needed to establish supervisory liability, the Motion is GRANTED to the extent it seeks to dismiss the claim against Detective Rogers in his individual capacity. Claim One as asserted against Detective Rogers in his individual capacity is DISMISSED WITHOUT PREJUDICE. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### B. Plaintiff's Municipal Liability Claims

In addition to suing Detective Rogers and Officer Graham in their individual capacities, Plaintiff's Section 1983 claim is also brought against Adams County and Defendants Rogers and Graham in their official capacities.[5]  [*See generally* #1] "[M]unicipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff." *Fofana v. Jefferson Cnty. Sheriff's*, No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Instead, to establish a municipality's

---

affidavit do not indicate that Detective Rogers was aware of or participated in the search that took place the following day.

[5] "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent," and thus courts apply the same standards of liability to municipalities as to official capacity claims against municipal officials. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

liability, the plaintiff must demonstrate that a municipal policy or custom directly caused his injury. *Id.*

"A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). After identifying an official policy or custom, the plaintiff must demonstrate causation by showing that the policy or custom "is the moving force behind the injury alleged." *Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (same). Finally, the plaintiff must demonstrate "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Cacioppo*, 528 F. App'x at 931 (quoting *Schneider*, 717 F.3d at 769).

Plaintiff argues that the Complaint plausibly alleges municipal liability:

by showing Adams County fails to adequately investigate allegations of unconstitutional searches and seizures, and taken together Adams County has a custom—through an informal policy or inadequate training—that, through its employees, lead to a deprivation of Plaintiff's federal rights.

[#22 at 4] But the allegations supporting this assertion are entirely conclusory and fail to identify any specific policy, custom, or training failure. [*See* #1, ¶¶ 50 ("[a]cting under color of law and pursuant to official policy, custom or widespread practice"); 51 ("Adams County and Detective Rogers had specific knowledge of said policy, custom or practice")] These conclusory statements and "formulaic recitation[s]" of the elements of a municipal liability claim are insufficient to state a claim for relief. *See Twombly*, 550

9

U.S. at 555; *see also Garcia v. Adams Cnty.*, No. 16-cv-01977-PAB-NYW, 2017 WL 4251931, at *3-4 (D. Colo. Sept. 25, 2017) (dismissing complaint where plaintiff failed to identify specific policies or failures to train and supervise); *Baumann v. O'Neil*, No. 14-cv-02751-CMA-NYW, 2015 WL 5121800, at *5 (D. Colo. Aug. 10, 2015) (finding "Plaintiff['s] attempts to pursue his municipal liability claim based on nothing more than naked assertions that some unidentified aspects of the City's training, supervision, and/or discipline regimes were deficient and a moving force behind the alleged wrongful arrest," were insufficient to state a municipal liability claim); *White v. City & Cnty. of Denver*, 13-cv-01761-CMA-MJW, 2014 WL 3953135, at *7 (D. Colo. Aug. 12, 2014) ("Plaintiff has not alleged specifics regarding why [defendants'] supervision was inadequate or explained how the incident described in the Second Amended Complaint could have been avoided by better supervision or training."); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *4 (D. Colo. May 18, 2011) (dismissing municipal liability claims where the failure to train or supervise allegations were "conclusory in nature and devoid of any supporting factual allegations that would demonstrate that the City or County were deliberate[ly] indifferent to the need for more or better training and supervision").

This deficiency is especially problematic to the extent Plaintiff attempts to rely upon a failure to train theory of municipal liability. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact,"

because "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom.'" *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Deliberate indifference is a "stringent standard," requiring the plaintiff to demonstrate that "the City had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" *Murphy v. City of Tulsa*, 950 F.3d 641, 651 (10th Cir. 2019) (quoting *Barney*, 143 F.3d at 1307).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted). "If a [training] program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for." *Bd. of Cnty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). The decisionmakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* "[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the moving force behind the plaintiff's injury." *Id.* at 407-08 (quotation omitted). "Deliberate indifference 'may be found absent a pattern of unconstitutional behavior' only in 'a narrow range of circumstances' where 'a violation of federal rights is a highly predictable or plainly

11

obvious consequence of a municipality's action or inaction.'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Barney*, 143 F.3d at 1307-08).

The Complaint neither alleges a pattern of tortious conduct by inadequately trained employees nor presents facts that would allow the Court to conclude that this case falls within the narrow range of circumstances where a violation of federal rights is highly predictable or a plainly obvious consequence. Indeed, the Complaint does not identify *any* past instances of unconstitutional conduct by Defendants, nor does it identify any form of training—inadequate or otherwise.[6]

Although not mentioned in the Complaint, Plaintiff's response cites one additional Fourth Amendment case in which Detective Rogers and Adams County were named as defendants. [#22 at 5-6 (*citing Hulse v. Adams Cnty.*, No. 14-cv-02531-RM-NYW)] This matter apparently resulted in a settlement for an unknown amount. [*Id.*] But even considering this additional case, Plaintiff has still failed to plausibly allege a pattern of tortious conduct that could support a municipal liability claim. "The fact that [Detective Rogers] ha[s] had [a] civil suit[] brought against [him] in the past that resulted in settlement[] is not even evidence of wrongdoing, let alone that [Adams County] has a custom or policy that fosters or results in wrongdoing." *Morris v. City of N.Y.*, No. 12-CV-3959, 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013); *see also Est. of Lobato v. Correct Care Sols.*, LLC, No. 15-CV-02718-PAB-STV, 2017 WL 1197295, at *8 (D.

---

[6] The Complaint mentions training exactly once, in a conclusory statement that "Adams County and Detective Rogers knowingly, recklessly or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control, equip, train, or discipline on a regular and continuing basis, officers of the Adams County Sheriff's Office." [#1 at ¶ 50] Notably, the Complaint alleges that at least Detective Rogers had the training to know that unauthorized, warrantless searches and seizures were unconstitutional, and it does not allege that Officer Graham did not receive similar training.

Colo. Mar. 31, 2017) ("Unsubstantiated allegations from complaints filed against the CCS defendants, without more, do not put the CCS defendants on notice that the training of their nursing staff is deficient regarding opiate withdrawal."); *Rowley v. Morant*, No. 10CV1182 WJ/GBW, 2014 WL 11430980, at *2 (D.N.M. July 14, 2014) ("[T]he mere fact that a lawsuit was filed without any mention of the disposition of the lawsuit or whether the City was found to have violated any rights does not establish a pattern and practice.").

Thus, because the Complaint fails to plausibly allege a municipal liability claim, the Motion is GRANTED to the extent it seeks to dismiss the claim against Adams County and against Detective Rogers and Officer Graham in their official capacities. Claim One as asserted against Adams County and Detective Rogers and Officer Graham in their official capacities is DISMISSED WITHOUT PREJUDICE. *Reynoldson*, 907 F.2d at 127.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss [#15] is **GRANTED** and the claims against Adams County, Detective Rogers, and Officer Graham in his official capacity are **DISMISSED WITHOUT PREJUDICE**. Should Plaintiff seek to continue to pursue such claims, he shall file an Amended Complaint by February 16, 2022. Failure to do so will result in judgment being entered in favor of those Defendants on those claims.

DATED:  January 26, 2022         BY THE COURT:

                                 s/Scott T. Varholak
                                 United States Magistrate Judge